## ZELMA BROWN v. STATE.

No. A-5432. Opinion Filed March 31, 1926.
Rehearing Denied April 10, 1926.
(244 Pac. 836.)

Johnston & Paddock, for plaintiff in error.

George F. Short, Atty. Gen., and Houston B. Teehee, Asst. Atty. Gen., for the State.

DOYLE, J. Appellant, Zelma Brown, was prosecuted by information in the district court of Noble county for the murder of Tommy Lewis, alleged to have been committed June 16, 1924, by shooting him with a pistol. The cause came on for trial September 12, 1924, and resulted in a conviction of manslaughter in the first degree, the jury fixing his punishment at imprisonment in the penitentiary for the term of 4 years. He has appealed from the judgment rendered on the verdict, and assigns as error that the verdict is not sustained by sufficient evidence; that it is contrary to law, and therefore the court erred in overruling the motion for a new trial.

The facts and circumstances preceding the homicide are not greatly in dispute. It appears that appellant, his wife, Roy Sheldon and his wife, Ollie Taylor, Irwin Hays, and Tommy Lewis, the deceased, all colored, were at the home of appellant in the city of Perry, and there indulged more or less in drinking choc beer. About 5 o'clock p. m. appellant left his house for the place of his employment, a local hotel; the rest of the party remaining. In the course of the conviviality, a controversy arose between appellant's wife and Tommy Lewis. She called him "a damn liar," and he slapped her face. Sheldon and Taylor separated the combatants. Appellant's wife left immediately to report to her husband that Lewis had slapped her. After hearing her story, appellant left his place of employment, and in the meantime Sheldon with his wife and baby and Lewis left for Sheldon's home. Appellant met them on the way and asked Sheldon why Tommy Lewis had slapped his wife, to which Lewis responded,"Don't ask him; he don't know about this; I will tell you"—to which appellant replied, "I will see you after a while." Appellant went on, and Sheldon and his wife together with Lewis went to their home. Appellant went to his home, and, not finding his wife there, armed himself with a pistol and started to go to

the home of his father-in-law. In going there he had to pass Sheldon's house; when in front of Sheldon's he turned in and went up to Sheldon's front door, which was open with the screen door closed. He was carrying a pistol in his hand and swinging it by his side. A few words were spoken, and the shooting commenced. Tommy Lewis was found lying on the floor with a gunshot wound in his back, from the effects of which he died the following day.

Roy Sheldon, the first witness for the state, testified: That his home is a two-room house, facing east, with a door and a window facing the street. That after the difficulty between Mrs. Zelma Brown and Tommy Lewis, and after she had gone to tell her husband, he told Tommy Lewis the best thing for him to do was to go, and not be there. That on the way home he met Zelma, who asked him, "What did my wife do to Tommy to cause him to slap her?" and Tommy said, "Don't ask him; he don't know about this; I will tell you." Zelma said, "I will see you after a while," and walked on. That he and his wife and Tommy went on to his house; it was then between 8 and 9 o'clock. That he sat down on the side of the bed inside the door, holding his baby, and saw Zelma Brown walking towards the door with a six-shooter pistol in his right hand, down to the side, swinging it like, and he came up to the door and said, "Roy, my wife tells me that you know all about Tommy slapping her." Tommy walked to the door and answered him, and he said, "No need of asking Roy; he don't know anything about it. I can tell you how it was." Zelma Brown pulled the screen door open, and said, "If you haven't got nothing, you ought to have something." Then they both whipped their guns up together, and the shooting commenced. In just a few seconds, as soon as the smoke kind of cleared, he ran out the screen door and saw Zelma Brown fire a shot through the window, and ran away. That the bullet

passed through the screen and shattered the window pane.

The testimony of appellant in his own behalf is as follows:

"I heard the Frisco train, and I says, 'There is that train; I am due at the hotel; stay as long as you want to,' and I struck a run so I could meet the bus. My wife came up there about 9 o'clock. She was crying and said that Tommy Lewis hit her. I told her to go on home, and I would see about it. She left. I left immediately after she left and met Roy Sheldon, his wife, and Tommy Lewis coming along by Mr. Thompson's. I spoke to Roy and asked him how come Tommy to hit my wife. Roy said he didn't know. Tommy said, 'Don't asked him, ask me.' I said 'That's all right.' I went on home to get my wife and find out the straight of it. My wife was not at home. I thought probably she had gone over to her father's, and I starts over there. I heard some one talking in Roy's house. It was dark. I walked up to the screen door and asked Roy, and, before he could say anything, Tommy said, 'Come in,' and he said. 'If you haven't got something, you ought to have,' and commenced shooting. He shot at me twice. I got down from the screen door, between the door and the window, I was afraid to pass the window and afraid to pass the door. There were windows all around the house. I saw through the window, and I thought I discerned a bulk, and I shot through the window. I was in hopes that I had shot him through the legs, because I didn't want to kill anybody. When I went to my house for my wife I got the gun out of my trunk. I was afraid of Tommy, and took the gun along for protection."

He also testified to his personal knowledge of the violent and dangerous disposition of the deceased.

The testimony covers more than 300 pages, but to further detail it would subserve no useful purpose.

Our Penal Code provides that homicide is justifiable when committed by any person in resisting any attempt to murder such person or to commit any felony upon

him, or when committed in the lawful defense of such person, when there is a reasonable ground to apprehend a design to commit a felony or to do some great personal injury, or imminent danger of such design being accomplished. Section 1754, C. S. 1921.

It is argued that the mere fact that appellant in expectation of an attack, armed himself, and knowingly went into the vicinity of deceased, who had threatened his life, did not deprive him of the right of self-defense; that, if the mere expectation of an assault from an adversary is to deprive the expectant of the right of self-defense merely because he goes armed in the vicinity of his enemy or goes out prepared upon the highway where he is likely at any moment to meet him, then he has armed himself in vain, and self-defense ceases whenever expectation begins.

Assuming that to be a correct statement of the law, it does not apply to the proof in this case. Here it appears that appellant armed himself, sought the deceased, and made a hostile demonstration with a gun, and announced his purpose to use it, and a few minutes later shot his victim through a window.

We understand the law to be that, if one who has taken the life of an assailant was himself in the wrong, he cannot plead self-defense, but the wrong which will preclude him from making that defense must relate to the assault in resistance of which the assailant was killed. If, after appellant's wife informed appellant that deceased had slapped her, he armed himself with a pistol and sought the deceased with a view of provoking a difficulty, or with the intent of having an affray, and the deceased assaulted him, his plea of self-defense would be of no avail, for the law will not hold him guiltless who, by seeking a combat and continuing therein, brings upon himself the necessity of killing his fellowman.

Upon the undisputed facts, and according to his own statement on the witness stand, appellant is at least guilty of manslaughter in the first degree.

The trial was exceptionally free from error; the instructions fairly presented the law of the case. Appellant, from all the record discloses, had a fair trial. It follows from what has been said that the verdict was as favorable to appellant as the law and the testimony warranted.

The judgment appealed from herein is accordingly affirmed.

BESSEY, P. J., and EDWARDS, J., concur.